THE STATE OF OHIO, APPELLEE, *v.* BROWNING, APPELLANT.

(No. 7844—Decided March 22, 1954.)

*Mr. C. Watson Hover, Mr. Melvin G. Rueger* and *Mr. Carl B. Rubin,* for appellee.
*Mr. James C. Utrecht,* for appellant.

HILDEBRANT, J.   Defendant prosecutes this appeal on questions of law from his conviction, by a jury, of unarmed robbery of a wrist watch.

The version of the prosecuting witness, one Suit, is that after a late-hour snack of soup and buttermilk he purchased a beer and a bottle of wine in a cafe and then sat outside on the steps in the warm night; that two strangers were sitting near; that the police dispersed the group due to the lateness of the hour; that defendant and one Barnett followed him down the

street trying to get him to open the bottle of wine; that in front of the entryway at 132 West 7th Street defendant struck him on the side of the head, knocking him down in the doorway and robbing him of his wrist watch; and that he followed the two men about three blocks when he called an officer, who apprehended them, and claimed he had been robbed of his watch. Other bits of Suit's testimony are that he had voluntarily quit his employment at the Randall Company; that his cap was knocked off by the alleged assault; and that he had drunk some whiskey during the afternoon and about a quart of beer earlier in the evening.

Defendant's version briefly is that Suit parted with possession of his watch to him as security for a loan of 60 cents to buy wine, which was to be repaid by a return and pawning of the watch the next day. There is no other testimony in the record as to how defendant came into possession of Suit's watch.

Police officers testified to halting defendant and Barnett on the stop cry of Suit; that no effort to escape was attempted; that Suit's cap was found at the site of the alleged assault; that they verified Suit's purchase of the watch originally; that others, late idlers in the vicinity, were dispersed, at which time the officers emptied some wine in possession of the crowd; and that Suit had an unopened bottle of wine on his person both at the time of the dispersal and after the arrest of defendant.

On cross-examination of Suit, the record shows:

"Q. Isn't it a fact, Mr. Suit, that you were discharged from Randall Company rather than quit? A. That didn't have anything to do with this case.

"Q. Were you discharged or did you quit?

"Mr. Rubin: Objection.

"A. I quit.

"The Court: Objection sustained. That has nothing to do with this case.

"" * * *

"Q. Mr. Suit, have you ever received psychiatric treatment?

"Mr. Rubin: Objection.

"The Court: Objection sustained.

"Q. Were you ever in the Veterans' Administration Hospital, Mr. Suit?

"Mr. Rubin: Objection.

"The Court: Objection sustained.

"Q. Are you presently undergoing psychiatric treatment, Mr. Suit?

"Mr. Rubin: Objection.

"The Court: Objection sustained.

"Q. Mr. Suit, have you ever accused anyone else of stealing anything?

"Mr. Rubin: Objection.

"The Court: Objection sustained. The jury will disregard all those questions."

On cross-examination, police officer Wagner was asked with reference to Suit:

"Q. Did you notice any odor of alcohol on his breath?

"Mr. Rubin: Objection.

"The Court: Objection sustained.

"Q. Did you make any mental notation or was it obvious to you that Mr. Suit had been drinking that evening?

"Mr. Rubin: Objection.

"The Court: Objection sustained."

Cross-examination of a witness is perhaps the most effective means devised by the law for discovery of the truth, and is an accepted universal right. The constitutional right of an accused in any criminal case to meet the witnesses face to face includes in its purpose the opportunity and right to cross-examine all the state's witnesses, and the widest latitude known to the law is granted in criminal cases, where the life, liberty,

and property of the accused are exposed to adverse and hostile witnesses. The texts state that in a criminal case this right should not be abridged, and that, since the credibility of a material witness is always in issue, the court may not disparage any effort made to impeach and discredit the witness within reason. The courts have gone so far as to hold that to deny the right of full and fair cross-examination as to a single question is manifest error.

Suit testified he voluntarily quit his previous employment with the Randall Company, so that the cross-examiner had a right to examine him as to the truth of that statement as reflecting on his credibility.

Defendant called as a witness the director of personnel relations of the Randall Company, whom the state conceded to be qualified as an expert in the field of industrial psychiatry. On direct examination, the record shows:

"Q. Would you state to the ladies and gentlemen of the jury what the circumstances surrounding his severing of relationship with the Randall Company were:

"Mr. Rubin: I object.

"The Court: Objection sustained.

"Mr. Utrecht: May I be heard for a moment? (Counsel conferred with the court at the bench.)

"The Court: It's immaterial.

"Mr. Utrecht: Proffer: The witness if permitted to answer would state that Lloyd Suit was discharged from the Randall Company.

"* * *

"Q. And you were able to evaluate from a psychological standpoint * * *

"Mr. Rubin: Objection.

"The Court: Objection sustained.

"Mr. Utrecht: Proffer: If the witness were permitted to answer he would answer 'Yes.'

"Your Honor, I am going to have a lot of questions along this line.

"The Court: I think it's all incompetent.

"Mr. Utrecht: Shall I read them to the reporter rather than bother the jury?

"The Court: There may be some that are competent. None of this is competent. We are trying the defendant.

"Mr. Utrecht: I think we are also trying the prosecuting witness.

"The Court: No, we aren't.

"Mr. Utrecht: His credibility.

"The Court: No, we aren't. It is immaterial.

"Q. At the time of Mr. Suit's separation from the Randall Company what, if anything, was found in his locker?

"Mr. Rubin: Objection.

"The Court: Objection sustained.

"Mr. Utrecht: Proffer: The witness if permitted to answer would testify approximately twelve or thirteen empty whiskey bottles.

"Q. During his course of employment did Mr. Suit ever have occasion to make false accusations of theft against any one?

"Mr. Rubin: Objection.

"The Court: Objection sustained. And the jury will disregard that question.

"Mr. Utrecht: Proffer: The witness if permitted to answer would answer: Yes, once or twice.

"Q. To your knowledge, Mr. Zimmerman, has Mr. Suit ever had any psychiatric treatment?

"Mr. Rubin: Objection.

"The Court: Objection sustained. I think we ought to quit these questions. I think they are all incompetent.

"Mr. Utrecht: Proffer: The witness if permitted to answer would testify that Mr. Suit had told him

that he had previous psychiatric evaluation at veterans hospital.

"Q. Mr. Zimmerman, have you ever noted or had occasion to note any psychiatric disturbances?

"The Court: Objection sustained. We will have to quit this line of questioning.

"Mr. Utrecht: I think I am entitled—

"The Court: I don't think you are entitled to it at all. The jury will disregard these questions. You can take your exception.

"Mr. Utrecht: Proffer: The witness if permitted to answer would testify that Suit is a psychopathic personality and a chronic alcoholic. (Counsel held a discussion with the witness.)

"Mr. Utrecht: In addition to what he stated above the witness would further testify that the man is wholly unreliable. I am going to ask this for the record Your Honor.

"Q. On how many occasions did Mr. Suit report to work drunk or become drunk during the course of his duties with the Randall Company? A. (Proffer) In an intoxicated condition, due to his wavering and manner of speech, I would say in excess of twenty-four times, and that's an understatement. Let the record show that there's an objection to the question and it is sustained by the court.

"The Court: Yes."

On direct examination of the defendant, the following appears:

"Q. Did you observe his condition with reference to sobriety?

"Mr. Rubin: Objection.

"The Court: Objection sustained. You have no more right to rob a drunken man than you have a sober man.

"Mr. Utrecht: That's not the point, Judge, it's the credibility of the prosecuting witness.

"Mr. Rubin: He is not entitled to testify as to the credibility of the prosecuting witness.

"Mr. Utrecht: Proffer: The witness if permitted to answer would say, 'Yes.'

"Q. Did you form an opinion as to his condition of sobriety?

"Mr. Rubin: Objection.

"The Court: Objection sustained.

"Mr. Utrecht: Proffer: The witness if permitted to answer woud answer 'Yes.'

"Q. Was Mr. Suit drunk or sober?

"Mr. Rubin: Objection.

"The Court: Yes, it is a repetition of questions. Objection sustained.

"Mr. Utrecht: Proffer: If the witness were permitted to answer he would answer that Mr. Suit was drunk."

The prosecuting witness and the defendant in this criminal case were the only two witnesses to testify directly as to the ultimate fact to be determined and dispositive of the case, namely, how the defendant came into possession of Suit's wrist watch. The credibility of the prosecuting witness, therefore, takes on an enhanced importance as an issue in the case. Evidence of his habits of sobriety, condition of sobriety at the time of the alleged robbery, his mental health, associations in life, similar accusations, and general habits in general could be quite pertinent as reflecting on his credibility and the probabilities of the conflicting versions of the parties.

The defendant was entitled to produce all such evidence available for consideration by the jury.

The rulings and comments of the court appearing from the record, as quoted above, appear to be inconsistent with the general charge of the court, as later given upon the subject of the jury's function as to

credibility of the witnesses and the probabilities of the case.

We, therefore, find that the cross-examination permitted the defendant was unduly restricted, that the proffered evidence referred to should have been admitted, and that it was prejudicial error to exclude the testimony.

No other error prejudicial to defendant appears of record.

The judgment is reversed and the cause remanded for further proceedings according to law.

*Judgment reversed.*

MATTHEWS, P. J., and Ross, J., concur.