[Cite as *State v. Carson*, 2019-Ohio-4550.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180336 |
| | | TRIAL NO.   17CRB-24874 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| STEVEN CARSON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  November 6, 2019

*Paula Boggs Muething*, City Solicitor, *Natalie Harris*, City Prosecutor, and *Jennifer Bishop,* Assistant City Prosecutor, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah E. Nelson,* Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} Defendant-appellant Steven Carson was accused of threatening and pointing a handgun at Quincy White, a contractor who had come to Carson's home to install carpet in his basement. Carson was convicted of aggravated menacing in violation of R.C. 2903.21. In two assignments of error, Carson argues that (1) his conviction was contrary to law because it was against the manifest weight of the evidence, and (2) the trial court erred in its rulings on two evidentiary matters— when it admitted testimony regarding Carson's mental health, and when it sustained an objection to testimony from Quincy White which demonstrated his motive to lie. For the following reasons, we affirm the judgment of the trial court.

### *Factual Background*

{¶2} Quincy White was a carpet installer for a company that contracted with Home Depot. On September 6, 2017, White arrived to install new carpet in Steven Carson's basement, which had recently flooded. White testified that the basement was so cluttered that he couldn't fit his tool bag through the clutter and had to take his tools in one by one. Carson testified that the clutter consisted of many different items, some of which were very valuable, including various pieces of memorabilia and signed photographs. Many of the items were piled up and stacked on top of one another in order to clear out the rooms where the carpet was being installed.

{¶3} White installed carpet throughout the morning and then took a break for lunch. He contacted his cousin, Delma Hill, and told him to meet him outside of Carson's home so they could go to lunch together. Hill parked his car in front of Carson's house. White walked out of the basement door and sat in the front

2

passenger seat of Hill's car. As White and Hill were sitting in the car talking, Hill grabbed a white Kroger bag from the back seat, got out of the car, and put the bag in the trunk. White testified at trial that the bag may have had "gym clothes or something" in it. Just as Hill sat back down in the car, Carson walked up and asked White, "What of mine did you steal and put in his trunk?" White told Carson he did not steal anything, and that Carson could look in the trunk if he wanted to. According to White, Carson just walked back into his house. White testified that he immediately called his supervisors and told them he had been accused of stealing. He told Hill he could not have lunch with him and Hill drove away. White then went to the basement to retrieve his tools, but the basement door was locked.

{¶4} White testified that while he was still on the phone with his supervisors, Carson came out of the back door, located directly above the basement door. Carson pulled out a gun and said, "Get the fuck off my property, motherfucker." White stated that the gun was a chrome revolver, and Carson pointed the barrel at him. White informed Carson that he was leaving, and turned and walked away, stopping briefly to grab some tools he had left in the driveway. White testified that was on the phone with his supervisors the entire time. White testified that as he was loading his tools in his van, he turned around and saw Carson at the bottom of the driveway, still pointing the gun at him. White got into his van and left while one of his supervisors called the police. White stated that he thought Carson was going to shoot him.

{¶5} Officer Kristie Johnson testified that she and five other officers responded to Carson's house for a call about a gun. Carson refused to step outside, and so Johnson talked to Carson while he stood in his doorway. Johnson's body

camera captured a portion of the conversation, and the footage was admitted as evidence at trial.

{¶6} On the video, Carson told Johnson that White was "scoping out his shit" earlier in the day. Then, he saw White and "another guy" on the street standing behind a car with the trunk up, and he witnessed one of them reach into his clothes, pull something out, and put it in the trunk. Carson confronted them and asked if that was something of his they put in the trunk. He said White started cussing and yelling at Carson, and Hill took off in his car. Carson came back in the house and locked the basement door so White couldn't come back in. He told White to "get his shit and get out." When Johnson asked Carson if he owned any firearms, he refused to answer, stating, "I'm not going to answer that question."

{¶7} Johnson informed him that it was aggravated menacing if he pointed a gun at White. Johnson twice told Carson that White said that Carson pointed a gun at him. Carson never denied pointing a gun at White, rather he told Johnson that he was protecting his property, and so he does not understand how he is in any trouble.

{¶8} Johnson arrested Carson on the scene for aggravated menacing. Johnson testified that the basis for her arrest was not only White's statement, but that White's supervisors told her they had heard the "commotion" over the phone, and White told them that Carson was pointing a gun at him as it was happening. The police did not search the home or recover a firearm.

{¶9} Although not captured on the body camera, Johnson testified that Carson told her that everybody steals from him. He told her that the water restoration company stole from him, and that the moving company burglarized his house.

4

{¶10} Carson testified in his defense, as did his father and his wife. John Carson, Carson's father, stated that while White was working on the carpet, he asked Carson if there was anything in the basement he wanted to get rid of, and Carson said no. Later, White asked Carson a second time if he was willing to sell anything in the basement, and Carson again declined. John told Carson to keep an eye on his stuff, because he thought White was interested in it.

{¶11} Jennifer Carson, Carson's wife, testified that when she came home that day, Carson told her the carpet guy had stolen something. She helped him go through everything to see what was missing. She stated that Carson did not own a gun, and she had never seen him with a gun. Jennifer stated that she had never seen Carson be violent.

{¶12} During cross-examination of both Jennifer and John, the prosecution elicited testimony, over defense objection, that Carson had been diagnosed with depression. Carson testified that he was diagnosed with cancer in 2010 and did not have a good prognosis, so he went into a severe depression. He testified that he now sees a doctor every six months and takes an antidepressant. He claimed that after he beat the cancer, the depression had become much less than it had been and the antidepressant doses had gone down.

{¶13} Carson testified that White asked him three to four times if he was willing to sell anything, and Carson told him no each time. After White had been working for a few hours, Carson saw White across the street with "another guy" standing behind a car with the trunk open. He saw the "other guy" take something out of his jacket, slide it into the trunk, and then close the trunk.

{¶14} Carson stated that when he confronted them, they both got combative. The "other guy" got into the car and pulled away quickly while White was yelling and screaming. Carson testified that White never offered to let him look in the trunk. Carson went inside and locked the basement door. White started beating on the basement door and yelling. Carson went out the back door and told him to get out. He stated that he did not have a gun, that he did not threaten White in any way, and that he did not follow White out to the driveway.

{¶15} Carson testified that he did not call the police. Instead, he called Home Depot and the flooring company, and they assured him they would cooperate in finding the stolen item, and would send someone else to finish installing the carpet. He stated that the police did not arrive until about two to three hours after White left, and they never asked to search his house. Sometime after the fact, he discovered that he was missing a signed Michael Jackson photograph. He testified that he could tell White or the "other guy" placed an 8 x 10 frame picture in the trunk, but he did not know which item had been stolen because he had over 40 signed photographs in his basement.

### First Assignment of Error

{¶16} Carson's first assignment of error is that his conviction for aggravated menacing was contrary to law because it was against the manifest weight of the evidence. When determining whether a conviction is against the manifest weight of the evidence, an appellate court

> weighs the evidence and all reasonable inferences, considers the
> credibility of the witnesses, and determines whether in resolving conflicts

in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.

*State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Reversal and the grant of a new trial should only be done in "exceptional cases in which the evidence weighs heavily against the conviction." *Id.* The trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given to the evidence presented. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

{¶17} The aggravated-menacing statute, R.C. 2903.21(A), provides in relevant part that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person." Aggravated menacing is a first-degree misdemeanor. R.C. 2903.21(B). Serious physical harm includes any physical harm that carries a substantial risk of death, involves substantial or permanent incapacity, or serious or permanent disfigurement. R.C. 2901.01(A)(5).

{¶18} Testimony by the victim that the defendant pointed a gun at him, and that the victim was afraid the defendant would shoot him, is sufficient to sustain a conviction for aggravated menacing. *See In re Shad,* 1st Dist. Hamilton Nos. C-080965 and C-081174, 2009-Ohio-3611, ¶ 17.

{¶19} There is no doubt that there was conflicting evidence in this case and issues with regard to the credibility of the witnesses. Carson claims the verdict is against the manifest weight of the evidence because White was not believable. Carson claims that White fabricated his story about Carson having a gun in order to avoid a theft accusation, which would have cost him his job. Carson and his witnesses all testified that he did not own a gun. White testified that Carson not only

7

had a gun, but that he pointed it at him. The body camera video reveals, however, that when Johnson informed Carson of White's allegation, Carson never stated that he did not own a gun. In fact, when Johnson specifically asked Carson if he owned a gun, Carson refused to answer. In addition, White's supervisors were on the other end of the call at the time of the incident and are the ones who actually called 911.

{¶20} The jury was in the better position to weigh the credibility of the witnesses, and it did not err in believing White's version of the events over Carson's. This is not one of those "exceptional cases in which the evidence weighs heavily against the conviction" such that reversal is required, and so the conviction was not against the manifest weight of the evidence. Carson's first assignment of error is overruled.

### *Second Assignment of Error*

{¶21} In his second assignment of error, Carson contends that the trial court erred with regard to two evidentiary rulings: (1) the trial court erred in allowing testimony regarding his mental-health diagnosis because the testimony was irrelevant, unfairly prejudicial, and amounted to inadmissible character evidence, and (2) the trial court erred in precluding certain cross-examination of White about his motive to lie.

{¶22} "A trial court has broad discretion in the admission of evidence, and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the decision." *State v. Obermiller,* 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 61. "An abuse of discretion connotes more than an error of law or judgment; it implies that the court's

attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶23} During cross-examination, the prosecutor asked both John and Jennifer whether Carson had any mental-health "problems" or "diagnoses." Defense counsel objected to the questions, arguing that the evidence was not relevant and was prejudicial. The judge allowed the witnesses to testify about Carson's depression diagnosis.

{¶24} On appeal, Carson argues that the evidence was not relevant, was unduly prejudicial, misled the jury, and was improper character evidence. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.

{¶25} The state was clearly trying to communicate to the jury that Carson's mental illness made him erratic and paranoid about people stealing from him. In this way, the state was attempting to attack Carson's credibility and rebut his defense that White made up the story about the gun because White stole something from Carson and would get fired if he were found out. The state brought out Carson's mental-health diagnosis of depression and inferred that it made him paranoid and less credible.

{¶26} The problem is that the state did not actually produce any sort of evidence to support its suggestion that Carson's actions on the day in question were linked to his depression. While questions about a witness's mental health are sometimes relevant to credibility, courts typically require expert testimony or medical records to connect how a witness's mental-health diagnosis might affect his

credibility. *See, e.g., State v. Browning*, 98 Ohio App. 8, 11, 128 N.E.2d 173 (1st Dist.1954) (expert psychiatric testimony of the witness's "habits of sobriety, condition of sobriety at the time of the alleged robbery, his mental health, associations in life, similar accusations, and general habits in general could be quite pertinent as reflecting on his credibility and the probabilities of the conflicting versions of the parties."); *State v. Hadley*, 3d Dist. Marion No. 9-11-30, 2013-Ohio-1942, ¶ 70 (because defense counsel did not intend to present any credible evidence, such as medical records or expert testimony, as to how the witness's mental illness or medications he was taking might have affected him on the day in question, the court properly sustained objections to counsel's attempts to cross-examine the witness about his mental illness).

{¶27} There is no dispute that Carson suffered from depression and took medication as a result. However, unlike in *Browning,* the testimony in Carson's case came from lay persons, and nobody testified as to whether his depression even affected his actions that day, let alone how.

{¶28} In overruling the relevance objection, the court merely said, "I don't know anything about it, so I'll allow the question to proceed." This reasoning is arbitrary and unreasonable. Prior to admitting the testimony, the court should have determined what Carson's mental illness was, and whether it was relevant to the case. If the court was not sure how it would rule until it heard more testimony, then it should have allowed the state to proffer evidence outside the presence of the jury. The court's explanation for overruling the objection was unreasonable. The fact that

Carson suffered from depression did not have any tendency to make a fact of consequence more or less probable.[1]

{¶29} Nevertheless, that is not the end of our inquiry. Where a defendant has not suffered any material prejudice as a result of the admission of the evidence, the trial court's decision will not be reversed on appeal, even if the court abused its discretion in admitting the evidence. *Obermiller,* 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, at ¶ 61; *see State v. Williams*, 2016-Ohio-5827, 71 N.E.3d 592, ¶ 33 (1st Dist.) (the trial court abused its discretion in allowing the state to impeach its own witness, but the defendant did not suffer material prejudice as a result). In determining whether Carson suffered material prejudice as a result of the trial court's error, we must consider both the impact that the offending evidence had on the verdict and the strength of the remaining evidence. *State v. Cornwell,* 2015-Ohio-4617, 48 N.E.3d 169, ¶ 35 (9th Dist.), citing *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 25.

{¶30} Although the trial court abused its discretion in admitting the testimony about Carson's mental health, Carson was not materially prejudiced as a result. First, defense counsel was able to rehabilitate Carson's credibility during his direct examination of Carson by eliciting testimony that his mental-health diagnosis was for depression as a result of being diagnosed with cancer, and that his depression was much less severe than it used to be since he had survived the cancer. Counsel also elicited testimony from Carson's wife that his depression has never manifested with him being violent.

---

[1] Since the trial court abused its discretion in admitting the mental-health testimony, we do not reach the questions of whether the testimony was unfairly prejudicial in violation of Evid.R. 403, or was improper character evidence barred by Evid.R. 404.

{¶31} Second, although the state's questions regarding Carson's mental health were improper for the reasons discussed above, the state's case did not hinge on the testimony about Carson's mental health. The state did not bring up Carson's mental health during its initial closing argument. The state only talked about it briefly during rebuttal after defense counsel discussed it during his closing argument. During rebuttal, the state argued that Carson's bizarre and erratic behavior that day could be explained by his mental-health diagnosis.

{¶32} Regardless, the jury was able to view Johnson's body camera video and judge for itself if it believed Carson's behavior was bizarre and erratic, at least with regard to his conversation with Johnson. While Carson's credibility was a central issue in this case, we hold that he has not shown that letting the jury hear that he suffered from depression that was controlled with medication impacted the verdict. Since Carson was not materially prejudiced as a result of the admission of testimony about his mental health, we do not disturb the court's judgment.

{¶33} In his second issue presented for review, Carson argues that White's testimony that he would lose his job if accused of theft was admissible to prove that White had a motive to lie.

{¶34} During his cross-examination of White, defense counsel asked if White would be fired if he was convicted of theft. White answered, "Yes," but the prosecution objected. The court sustained the objection and directed the jury to disregard the statement.

{¶35} Contrary to Carson's argument, White did not testify that he would lose his job if he was *accused* of theft; rather he testified that he would lose his job if *convicted* of theft. It is not clear on what basis the state objected or on what basis the

trial court struck the testimony. Nevertheless, the state correctly points out in its brief that the question called for speculation. The trial court did not abuse its discretion by excluding a question that called for White to speculate as to what would happen to him if he were convicted of theft.

{¶36} Also, even if not speculative, Carson was not materially prejudiced by exclusion of the testimony. Carson elicited testimony throughout the trial to support his theory that White had stolen from him, and therefore had a motive to lie and make up the story about the gun to cover himself. Carson's second assignment of error is overruled.

### *Conclusion*

{¶37} Carson's conviction was not against the manifest weight of the evidence. Although the trial court abused its discretion in admitting testimony regarding Carson's mental health, Carson was not materially prejudiced as a result. Also, the trial court did not abuse its discretion in excluding White's testimony as to whether he would be fired if convicted of theft. For the foregoing reasons, both assignments of error are overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

**ZAYAS, P.J.,** and **WINKLER, J.,** concur.

Please note:
    The court has recorded its own entry on the date of the release of this opinion.