[Cite as *Durastanti v. Durastanti*, 2020-Ohio-4687.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| MELISSA TOWNSEND DURASTANTI, | : | APPEAL NO. C-190655 |
| | | TRIAL NO. DV-190584 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| RONALD JOSEPH DURASTANTI, | : | |
| Defendant-Appellant. | | |
| | : | |

Civil Appeal From:  Hamilton County Domestic Relations Court

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  September 30, 2020

*Melissa Townsend Durastanti,* pro se,

*Brafford & Rivello, Suellen M. Brafford,* for Defendant-Appellant.

**BERGERON, Judge.**

{¶1} In this appeal from the trial court's grant of a domestic violence civil protection order, we consider whether the trial court erred in overruling the magistrate's denial of the protection order. The result hinges on the narrow standard of review provided for by Civ.R. 65.1, which contrasts in many ways with the more expansive standard under Civ.R. 53. Because we find that the trial court applied the incorrect standard under Civ.R. 65.1 in its order overruling the magistrate, we reverse the trial court's grant of the protection order and remand for additional proceedings consistent with this opinion.

I.

{¶2} Melissa Townsend (formerly Durastanti) and Joe Durastanti married in March 2017. The couple initially lived together in Mississippi with Ms. Townsend's three children (unrelated to Mr. Durastanti), before relocating to Cincinnati, Ohio at different points in 2019. Beyond these basic details, the parties disagree on nearly all of the relevant facts in this case—particularly the backdrop leading to the request for the protection order. These divergent tales, chronicled below, place witness credibility as the centerpiece of this case.

{¶3} According to Ms. Townsend, Mr. Durastanti engaged in three acts of "erratic physical abuse" between 2017 and 2019. The first act of abuse, in April 2017, involved pushing and shoving in the couple's Mississippi home—but that did not result in any visible bruising or medical treatment. The second act of abuse relates to a trip the couple took to Columbia in the summer of 2018. In the aftermath of that trip, Ms. Townsend recalled an argument (in connection with disputes emanating from their international excursion) during which Mr. Durastanti allegedly shoved her against a door and into an adjacent room, whereupon she fell and bruised her

shoulder. Ms. Townsend took a picture of the bruise after the incident, which she entered into evidence at the hearing before the magistrate.

{¶4} The third event stems from Ms. Townsend's decision to leave her husband. In November 2018, she broke the news to Mr. Durastanti that she wanted a divorce and planned to move to Cincinnati, with the dual purposes of obtaining treatment for her son (who has a rare stomach condition) and distancing herself from their tumultuous relationship. A few months later, Ms. Townsend embarked for Cincinnati, after agreeing with Mr. Durastanti that he would come periodically to visit her and the children in Cincinnati, ostensibly to see if they could maintain some type of on-going amicable relationship. Between January 2019 and Ms. Townsend's filing for a protection order, Mr. Durastanti appeared (unannounced) to visit her and the children three times.

{¶5} These visits did not go well, bringing us to the third incident of alleged abuse in May 2019. At trial, Ms. Townsend explained that she informed Mr. Durastanti that she no longer wanted a relationship with him, agreeing to meet him at a grocery store in Cincinnati to discuss the break-up in person. Ms. Townsend testified that at some point during the conversation, she left the store and entered Mr. Durastanti's car, and that he proceeded to drive extremely fast (upwards of 100 miles per hour) and erratically, before shoving her out of the car in her driveway. As she fell out of the car, her leg hit the door, resulting in bruising. Ms. Townsend submitted a picture of the bruise on her leg as evidence at trial. A few days after this argument, Mr. Durastanti texted Ms. Townsend: "I know what I'm about to do! If you don't stop your taking my family again I'll take yours." Ms. Townsend understood this and a related text to represent threats to her and her children.

3

{¶6} Unsurprisingly, Mr. Durastanti paints a very different picture of his relationship with Ms. Townsend. He maintains that he "never [] laid a hand on her" or threatened her in any way. As to the post-Columbia trip argument, Mr. Durastanti claims he was lying on the couch when Ms. Townsend started screaming at him: "I can't believe you're mad. You're abusive." Mr. Durastanti bounded up the stairs when Ms. Townsend grabbed his arm and shoved his face in the closet door; in response, he pushed her off of him in defense. Similarly, Mr. Durastanti denies physically abusing Ms. Townsend after the grocery store encounter, insisting that they simply had a conversation: "We talked in her car. I left in my car and she left in her car."

{¶7} Mr. Durastanti also contested the circumstances of the couple's divorce and Ms. Townsend's January 2019 move to Cincinnati. According to Mr. Durastanti, Ms. Townsend informed him that they needed to get divorced because his income precluded her son from getting into the desired treatment program at Cincinnati Children's Hospital. Mr. Durastanti obliged, filing for divorce and purchasing a home for Ms. Townsend and her children in Cincinnati.

{¶8} By March 2019, with the divorce finalized, Mr. Durastanti claimed that Ms. Townsend had second thoughts and wanted to get remarried, prompting the couple to discuss buying another house in Cincinnati where they and the children could live together. To support this assertion at trial, Mr. Durastanti submitted a text message into evidence in which Ms. Townsend discussed a May date for their (encore) wedding. The couple looked at homes together, but Ms. Townsend then changed her mind, deciding to stay in her current home and not to remarry. Nevertheless, Mr. Durastanti purchased a home in Cincinnati just a few miles from Ms. Townsend, seemingly convinced that Cincinnati provided a better place to live

4

than Mississippi. Ms. Townsend filed her petition for a protection order shortly after this purchase.

{¶9} After sorting through all of the evidence and testimony in this case, the magistrate dismissed Ms. Townsend's petition, deeming the evidence "insufficient to demonstrate an act of domestic violence." The trial court initially adopted the magistrate's decision (*see* Civ.R. 65.1(F)(3)(c)(ii)), but Ms. Townsend timely objected, prompting the trial court to convene a hearing on the objections. A day after the hearing, the trial court sustained Ms. Townsend's objection and issued a protection order for one year as to Ms. Townsend (though not to her children). Significantly, in its entry, the trial court cited only the May 2019 incident and corresponding bruise as evidence "support[ing] a finding that [Mr. Durastanti] attempted to cause or recklessly caused bodily harm to [Ms. Townsend] pursuant to R.C. 3113.31(A)(1)(a)(i)."

{¶10} On appeal, Mr. Durastanti raises two assignments of error. First, he contends that the trial court erred by granting a protection order as against the manifest weight of the evidence. Next, he maintains that the trial court applied the incorrect legal standard and failed to accord the magistrate due deference in his decision. We address the second assignment of error first, as we find that dispositive.

II.

{¶11} Unlike other civil proceedings referred to a magistrate—which are generally governed by Civ.R. 53—proceedings for a domestic violence civil protection order under R.C. 3113.31 implicate Civ.R. 65.1. Key distinctions between Civ.R. 53 and Civ.R. 65.1 drive our decision in today's case, so we take a moment to explore and contrast the two standards before applying them to this case.

A.

{¶12} Under Civ.R. 53, a trial court may "adopt or reject a magistrate's decision in whole or in part," modified or unmodified, "[w]hether or not objections are timely filed" by any party. Civ.R. 53(D)(4)(b). The trial court may also "hear a previously-referred matter, take additional evidence, or return a matter to a magistrate," *id.,* and is explicitly authorized to "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues * * * ." Civ.R. 53(D)(4)(d). This "independent review as to objected matters" standard is specifically intended to provide "more stringent" review than the "defect evident on the face" standard for non-objected matters. 2006 Staff Note, Civ.R. 53(D). The trial court's "role" under Civ.R. 53 is to "make its own factual determinations through an independent analysis of the issues," even up to the taking of new testimony or a rehearing of the matter. *Crosby v. McWilliam,* 2d. Dist. Montgomery No. 19856, 2003-Ohio-6063, ¶ 34 (cited with approval in the 2006 Staff Note to Civ.R. 53(D)); *see* Civ.R. 53(D)(4)(b).

{¶13} In contrast, Civ.R. 65.1—which became effective in 2012—provides a more streamlined procedure designed "to expedite the process for obtaining a protection order after a full hearing * * * ." *M.D. v. M.D.*, 2018-Ohio-4218, 121 N.E.3d 819, ¶ 48 (8th Dist.). It contains "a set of provisions uniquely applicable to" the special statutory proceedings in R.C. 3313.31. *See Weber v. Forinash*, 6th Dist. Sandusky No. S-14-034, 2015-Ohio-3187, ¶ 30, citing 2012 Staff Note, Civ.R. 65.1; *see also M.D.* at ¶ 46-47. Notably, the streamlined review process for magistrate decisions under Civ.R. 65.1(F) emerged out of a belief that Civ.R. 53's "independent review by the court of magistrate 'decisions' rendered after hearing, and * * *

objections' " was "incompatible" with the goal of expediting civil protection order proceedings. 2012 Staff Note, Civ.R. 65.1(F).

{¶14} Civ.R. 65.1 simplifies proceedings for a protection order in a few ways.[1] First, Civ.R. 65.1(F)(3)(b) provides that civil protection orders are not "magistrate orders" as contemplated by Civ.R. 53(D), and hence not subject to the requirements of Civ.R. 53(D)(2) or (3). *See M.D.* at ¶ 48. The trial court's pre-objection review of a magistrate's decision is limited to "a determination that there is no error of law or other defect evident on the face of the order," after which the court may adopt, modify, or reject the order. Civ.R. 65.1(F)(3)(c)(ii) and (iii). Unlike Civ.R. 53, Civ.R. 65.1 "does not provide for a request for findings of fact and conclusions of law * * * " *Insa v. Insa,* 2016-Ohio-7425, 72 N.E.3d 1170, ¶ 27 (2d Dist.). Nor does Civ.R. 65.1 reference the taking of additional evidence or rehearing of the matter, which has led some of our sister districts to conclude that a trial court proceeding under Civ.R. 65.1 is "unable to take additional evidence * * * [and] 'subject to drawing conclusions only from review of the same transcript and record' " before the appellate court. *M.D.* at ¶ 53, quoting *Insa* at ¶ 27. In any event, the trial court here did not seek to consider additional evidence beyond the record before the magistrate.

{¶15} Finally—and in this case, most importantly—Civ.R. 65.1 does not contain a provision allowing for the trial court's independent review of the magistrate's factual determinations. Instead, a party objecting to the trial court's adoption of the magistrate's order assumes an affirmative burden under Civ. R. 65.1(F)(3)(d)(iii) to demonstrate one of three things:

---

[1] Needless to say, a trial court does not have to refer such matters to a magistrate. Civ.R. 65.1(F)(1). But if it does, Civ.R. 65.1(F) governs our analysis.

[1] that an error of law or other defect is evident on the face of the order, or [2] that the credible evidence of record is insufficient to support the granting or denial of the protection order, or [3] that the magistrate abused the magistrate's discretion in including or failing to include specific terms in the protection order.

The magistrate in this case denied Ms. Townsend's request for a protection order, leaving no "specific terms in the protection order" to trigger an objection. Civ.R. 65.1(F)(3)(d)(iii). The trial court initially adopted the magistrate's denial, and in doing so determined that "there [wa]s no error of law or other defect evident on the face of the order." Civ.R. 65(F)(3)(c)(ii). Ms. Townsend's objection consequently focused on the second prong of Civ.R. 65.1(F)(3)(d)(iii): that credible evidence of the record was insufficient to support the magistrate's denial of the protection order.

B.

{¶16} To obtain a protection order pursuant to R.C. 3113.31, the petitioner must prove by "a preponderance of the evidence" that the respondent engaged in an act of domestic violence against petitioner or petitioner's family. *Pinkston v. White,* 12th Dist. Butler No. CA2019-06-094, 2019-Ohio-5165, ¶ 19, citing *Felton v. Felton,* 79 Ohio St.3d 34, 679 N.E.2d 672 (1997), paragraph two of the syllabus. Domestic violence includes "[a]ttempting to cause or recklessly causing bodily injury." *See* R.C. 3113.31(A)(1)(a)(i). In this case, the magistrate found the evidence insufficient to support Ms. Townsend's claim that Mr. Durastanti engaged in an act of domestic violence. The trial court, reviewing the same record, reached the opposite conclusion.

{**¶17**} This brings us back to the divergent—and at many points, incompatible—tales presented by Ms. Townsend and Mr. Durastanti at the hearing. Neither individual was a model of clarity or consistency on the witness stand, and corroborating evidence was scarce to nonexistent. Faced with significantly different accounts of events, the magistrate in this case had to make a quintessential credibility determination: Which of these two witnesses told the truth?

{**¶18**} Ms. Townsend's testimony before the magistrate, if credible, would be sufficient to show by a preponderance of the evidence that Mr. Durastanti engaged in an act of domestic violence. The magistrate, by denying the protection order, found that her testimony lacked credibility. And, as pointed out by the magistrate at trial and urged by Mr. Durastanti here, Ms. Townsend's testimony was riddled with inconsistencies. These inconsistencies convinced the magistrate that he simply could not believe Ms. Townsend.

{**¶19**} In its order overruling the magistrate's denial of a protection order, the trial court in this case explained that "the evidence supported a finding that [Mr. Durastanti] attempted to cause or recklessly caused bodily injury to [Ms. Townsend] * * * ." To support this conclusion, the court cited Ms. Townsend's testimony about the May 2019 instance of abuse, the photograph of a bruise on Ms. Townsend's leg, her general fear of Mr. Durastanti, and his recent move to Cincinnati. *See Wise v. Wise*, 2d Dist. Montgomery No. 23424, 2010-Ohio-1116, ¶ 9 ("In a civil manifest-weight analysis, 'the court reviews the trial court's rationale and the evidence the trial court has cited in support of its decision.' ") (quoting *Gevedon v. Ivey*, 172 Ohio App.3d 567, 876 N.E.2d 604, 2007–Ohio–2970, ¶ 60 (2d Dist.).

{**¶20**} But whether supporting evidence existed for the *grant* of a protection order was not the correct inquiry for the trial court under Civ.R. 65.1. When Ms.

Townsend objected to the trial court's initial adoption of the magistrate's denial, she undertook an obligation to show that the evidence was "*insufficient* to support the * * * *denial* of the protection order." Emphasis added. Civ.R. 65.1(F)(3)(d)(iii). To overrule the magistrate's decision, the trial court thus needed to find not that sufficient evidence existed to support the grant of an order, but that *insufficient* evidence existed to support the magistrate's *denial* of the order. To put it another way, the trial court needed to find that the magistrate's credibility determinations—including its decision to discount portions of Ms. Townsend's testimony—were insufficiently supported by the record.

{¶21} The trial court did not purport to make this finding, and on remand, it will have to make these assessments applying the appropriate standard under Civ.R. 65.1. The trial court is by no means required, in all circumstances, to give deference to the magistrate's factual findings. *Pinkston,* 12th Dist. Butler No. CA2019-06-094, 2019-Ohio-5165, ¶ 32. But where, as here, the weight of the evidence turns almost exclusively on credibility, the trial court "must be mindful * * * that the magistrate, as the trier of fact, 'is in the best position to judge the credibility of the witnesses and the weight to be given to the evidence presented.' " *In re S.D.,* 1st Dist. Hamilton Nos. C-200045 and C-200084, 2020-Ohio-3379, ¶ 18, quoting *State v. Carson*, 1st Dist. Hamilton No. C-180336, 2019-Ohio-4550, ¶ 16. *See Pinkson* at ¶ 32 ("[W]hen a trial court judge commits credibility determinations to a magistrate, the presumption that a subsequent credibility determination made by the trial court is correct is lessened."); *In re X.B.,* 10th Dist. Franklin Nos. 16AP-243 and 16AP-277, 2016-Ohio-5805, ¶ 13 (as the "actual trier of fact present during the testimony," the magistrate sat "in the better position to judge the credibility of witnesses").

{¶22} The contrast between Civ.R. 65.1 and Civ.R. 53 is illuminating. So far as the "independent" and "stringent" review of a magistrate's findings under Civ.R. 53 is "incompatible" with the purpose of expediting civil protection order proceedings under Civ.R. 65.1, a trial court in a Civ.R. 65.1 proceeding should step lightly when discounting the magistrate's credibility determinations—particularly without additional evidence at its disposal. *See In re S.D.* at ¶ 18 (noting that the trial court "did not have the advantage of being present in the courtroom as the witnesses testified and observing the witnesses' demeanor").

{¶23} Of course, we do not mean to suggest that a trial court must reflexively follow the magistrate's disposition—but the court must apply the proper legal analysis under Civ.R. 65.1. To overrule the magistrate's denial of a protection order under Civ.R. 65.1 on sufficiency grounds, the trial court must find that insufficient evidence existed to support the magistrate's decision. That did not happen here. Because the trial court did not make this finding, we find that the trial court erred in overruling the magistrate and granting the protection order.

{¶24} Accordingly, we reverse the trial court's grant of a domestic violence civil protection order and remand for application of the standard we have explained to the facts of this case. We thus sustain the second assignment of error and find the first assignment of error moot based on our disposition.

Judgment reversed and cause remanded.

**MYERS, P.J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its own entry this date.

11