[Cite as *State v. Johns*, 2022-Ohio-1573.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. | C-210337 |
| | | | C-210338 |
| Plaintiff-Appellee, | : | TRIAL NOS. | 20CRB-16763A |
| | | | 20CRB-16763B |
| | : | | |
| vs. | | | |
| | : | *O P I N I O N.* | |
| JEFF JOHNS, | : | | |
| Defendant-Appellant. | : | | |

Criminal Appeals From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: May 11, 2022

*Andrew W. Garth,* City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Alexandra Saunders,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond L. Katz,* for Defendant-Appellant.

**CROUSE, Judge.**

{¶1}    Defendant-appellant Jeff Johns appeals his misdemeanor convictions for violation of a protection order and criminal damaging. In one assignment of error, Johns contends that his convictions were against the manifest weight of the evidence. For the reasons that follow, we affirm the judgments of the trial court.

### *Facts and Procedure*

{¶2}    In two complaints, the state alleged that on September 1, 2020, Johns (1) violated the terms of a protection order, pursuant to R.C. 2919.27, by "being seen by protected person, Amanda Groeschen, on Amanda's property," and (2) damaged her property, pursuant to R.C. 2909.06, by "removing a security camera from [Groeschen's] residence and throwing the camera to the ground."

{¶3}    At a bench trial, Johns and Groeschen testified about the night in question and the history of their relationship. Johns and Groeschen generally agree that their eight-month-long relationship ended in March 2020, and that they continued to communicate with one another for several months following the breakup. There is some dispute though as to when, and on whose terms, communication between the two finally stopped. However, the parties do not dispute the existence of a civil stalking protection order ("CSPO"), granted on July 9, 2020, that required Johns to stay 500 feet away from Groeschen. *See generally Groeschen v. Johns*, 1st Dist. Hamilton No. C-210306, 2022-Ohio-359.

{¶4}    Groeschen testified that on September 1, 2020, she received an alert on her cell phone that movement was detected by one of the three cameras outside her first-floor apartment. She testified that, in a video captured by one of the cameras, she saw "a male that looked to me like Jeff Johns riding down my driveway on a Hover

Board towards the back side of my house."[1] Groeschen went out the back door to investigate and "saw Jeff Johns standing on the railing of my back porch * * * reaching for the camera that was in the back over the door." Groeschen testified that she was within one foot of Johns, and that the porch was well lit. Groeschen testified that after she saw him, Johns jumped off the porch, dropped the camera, and ran away. She claimed that Johns damaged the camera when he dropped it. The state also introduced a video exhibit from one of her security cameras that Groeschen initially claimed showed Johns on the property, though she later testified that an audio clip captured in another video was the reason she was able to identify him before going outside.

{¶5}   Johns disputed the entire series of events. He testified that he was in an online class that evening until around 9 p.m. and that after class, he went to a nearby bar until about 10 p.m. Johns stated that he then walked back to his apartment and drove to his friends' home in West Chester, Ohio. Johns testified that his residence was "about 800 feet" from Groeschen's residence, and that the bar was close enough to Groeschen's residence that he had to "change [his] entire way home," to avoid violating the CSPO.

{¶6}   Johns disputed that the person in the video exhibit was him, testifying that he "was not wearing shorts that evening," and that he did not own a "hover board," though he admitted that his daughter has one.

{¶7}   Following the testimony, Johns was found guilty as charged. In rendering its verdict, the court stated:

---

[1] On cross-examination, Groeschen testified that she misspoke when she called the device a hover board: "I guess the correct terminology, which I found out later, it's called a One Wheel."

That video is almost worthless, but it does show somebody there, a person. I'm basing my decision off the testimony of the victim, who I found compelling and truthful, therefore, I find the defendant guilty on each of these charges. She knows who he is. She was a foot away from him, and I believe her testimony. The defendant also puts himself right there when this happened, and he admits to, I guess, his daughter having one of those Hover Boards or whatever you want to call them, single wheel or whatever they are.

{¶8} Johns was sentenced on May 27, 2021. He timely appealed on June 8, 2021.

### *Sole Assignment of Error*

{¶9} In a single assignment of error Johns claims that, "[t]he trial court erred when, contrary to the manifest weight of the evidence and in a manner unfairly prejudicial to appellant's fair trial rights, it found him guilty of the charges against him." Johns asserts that Groeschen's "claim that [he] violated a protection order was entirely uncorroborated and mired in contradictions." He further contends that there was not "any independent evidence or a shred of documentation to show that there had been any damage to any property."

{¶10} When we review a challenge to the manifest weight of the evidence, we must "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Powell*, 1st Dist. Hamilton No. C-190508, 2020-Ohio-4283, ¶ 16, citing *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997).

4

**{¶11}** We should only reverse the conviction and grant a new trial in "exceptional case[s] in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus. "The trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given to the evidence presented." *State v. Carson*, 1st Dist. Hamilton No. C-180336, 2019-Ohio-4550, ¶ 16, citing *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

**{¶12}** Johns contends that Groeschen's testimony identifying Johns in the video exhibit was contradicted by her later statement that her identification actually came from a different video that was not played at trial or entered into evidence. Johns also argues that Groeschen's testimony that she saw him reaching for the camera was contradicted by her later testimony that he already had the camera in his hand when she saw him. He contends that these inconsistencies created a reasonable doubt that Johns violated the CSPO and damaged Groeschen's security camera. However, the trial court ultimately found the core of Groeschen's testimony—that she saw Johns standing directly in front of her on her back porch with her security camera in his hand—to be credible. The trial court is in the best position to make that determination.

**{¶13}** Johns also contends that he was actually the one to end the relationship, not Groeschen, and therefore the state's theory that he was harassing Groeschen makes no sense. While the parties disagreed about the finer points of their relationship ending, this is not a relevant consideration in this case. The parties do not dispute the existence of the CSPO—and the trial court believed that Johns was on Groeschen's porch, in violation of the CSPO.

5

**{¶14}** Finally, Johns contends that the trial court misstated the nature and substance of Johns's testimony in its summation of evidence. But the bottom line is: this was a "he said, she said" case, and the court specifically stated that it found Groeschen's version of the events to be credible. Based on our review of the record, we find that the trial court did not lose its way or create a manifest miscarriage of justice.

### *Conclusion*

**{¶15}** In light of the foregoing analysis, we overrule Johns's sole assignment of error and affirm the judgments of the trial court.

Judgments affirmed.

**MYERS, P. J.,** and **WINKLER, J.,** concur.


Please note:

The court has recorded its entry on the date of the release of this opinion