[Cite as *Ussher v. Ussher*, 2011-Ohio-1440.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| MELINDA USSHER | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2009-CA-49 |
| | : | |
| v. | : | Trial Court Case No. 06-DR-213 |
| | : | |
| THOMAS USSHER | : | (Civil Appeal from Common Pleas |
| | : | Court, Domestic Relations) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of March, 2011.

. . . . . . . . . . .

MELINDA USSHER, 3102 Harper Road, Mechanicsburg, Ohio 43044
       Plaintiff-Appellee, *pro se*

RONALD C. TOMPKINS, Atty. Reg. #0030007, 19 Pearce Place, Urbana, Ohio 43078
       Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1}   Thomas Ussher appeals from the trial court's final judgment and divorce decree that divided the parties' property and designated appellee Melinda Ussher as the legal custodian and residential parent of their children.

{¶ 2}   Thomas advances two assignments of error on appeal.[1] First, he contends the trial

---

[1] For purposes of clarity, we will refer to the parties by their first names.

court erred in awarding Melinda half of the equity in the marital home. Although this award was equal, Thomas asserts that it was not equitable. Second, he claims the trial court erred in naming Melinda as the legal custodian and residential parent. Thomas maintains that this decision was not in the best interest of the parties' children.

{¶ 3} The record reflects that Thomas and Melinda married in 2000. They had two children together, T.U. and K.U. The children were born in 2000 and 2004. The oldest child, T.U., has special medical needs as a result of being diagnosed with cerebral palsy and hydrocephalus. Melinda filed for divorce in October 2006. The matter proceeded to a final hearing on July 23, 2009. After reviewing the parties' proposed findings of fact and conclusions of law, the trial court filed its final judgment and divorce decree on December 4, 2009.

{¶ 4} Among other things, the trial court awarded the marital residence to Thomas. It ordered him to refinance an existing mortgage of $34,159 in his own name and to pay Melinda half of the equity based on a tax-assessed value of $58,590. Alternatively, if Thomas failed to refinance within ninety days, the trial court ordered the home to be sold with the resulting equity to be divided equally. The trial court also named Melinda as the legal custodian and residential parent of the parties' children and awarded Thomas standard visitation. This appeal followed.

{¶ 5} In his first assignment of error, Thomas challenges the trial court's decision to award Melinda half of the equity in their home. He contends such an award, under the facts of this case, is unfair. In support, Thomas notes that he was ordered to pay the mortgage for thirty-four months during the pendency of the divorce proceeding. He argues that these  payments reduced the mortgage balance from $41,296.84 when Melinda filed for divorce to $34,159 when the trial court

filed the final decree. Because he made the payments during this time,[2] Thomas contends Melinda should not have been awarded half of the roughly $7,000 in equity that accrued while the divorce action was pending. In response, Melinda asserts that the marital home went through foreclosure following the divorce decree and that she obtained nothing.

{¶ 6}    Upon review, we find Thomas' argument to be unpersuasive. The record reflects that he remained in the marital home from October 2006, when Melinda filed her complaint for divorce, through at least December 4, 2009, when the trial court filed the final divorce decree. Melinda left the marital residence in October 2006. This resulted in Thomas having sole beneficial use of the property for several years. In light of that fact, the trial court did not abuse its discretion in allowing Melinda to share in any equity that accrued while Thomas lived in the home.[3] See, e.g., *Galloway v. Khan*, Franklin App. No. 06AP-140, 2006-Ohio-6637, ¶23-25.   The first assignment of error is overruled.

{¶ 7}    In his second assignment of error, Thomas contends the trial court abused its

---

[2]It appears that Melinda actually made three of the payments, but the trial court's divorce decree ordered Thomas to repay her for them. (Doc. #231 at 22).

[3]Parenthetically, we note that the issue Thomas raises may be moot. It is well settled that we may take judicial notice of post-appeal matters to resolve questions of mootness. *Townsend v. Antioch Univ.*, Greene App. No. 2008 CA 103, 2009-Ohio-2552,    ¶8; see, also, *Hagerman v. City of Dayton* (1947), 147 Ohio St. 313, paragraph one of the syllabus ("When it has been brought to the attention of an appellate court that pending the appeal an event has occurred which renders moot one of the questions in the case pending before it, such appellate court need proceed no further with that part of the case which has become moot."). To address an issue of mootness, an appellate court, acting sua sponte, "may take judicial notice of facts generally known within its territorial jurisdiction or facts capable of accurate and ready determination by resort to sources whose accuracy reasonably cannot be questioned." *Townsend* at ¶8. In the present case, we take judicial notice, based on property records maintained by the Champaign County Auditor's office, that the Honda Federal Credit Union purchased the marital residence for $23,334 at a sheriff's sale on December 2, 2010. Given that the existing mortgage was $34,159 at the time of the divorce decree, Melinda's assertion that the forced sale of the residence produced no equity to divide has some credence. It may be that there is a deficiency. We have addressed the merits of Thomas' claim, however, because the trial court retained jurisdiction over the real estate issue and, therefore, could enter a future order that takes into account the effect of the foreclosure.

discretion in denying his motion for shared parenting and, instead, granting Melinda's motion to be the legal custodian and residential parent. He asserts that the trial court took a one-sided view of the evidence and that the statutory "best interest" factors do not support its decision. Conversely, Melinda argues that the trial court's decision is consistent with the relevant statutory factors and is not an abuse of discretion.

{¶ 8} When allocating parental rights and responsibilities, a trial court must consider the non-exclusive factors found in R.C. 3109.04(F). They include: "(a) [t]he wishes of the child's parents regarding the child's care; (b) [i]f the court has interviewed the child in chambers * * * regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court; (c) [t]he child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (d) [t]he child's adjustment to the child's home, school, and community; (e) [t]he mental and physical health of all persons involved in the situation; (f) [t]he parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights; (g) [w]hether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor; (h) [w]hether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted

of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child; (I) [w]hether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; [and] (j) [w]hether either parent has established a residence, or is planning to establish a residence, outside this state." R.C. § 3109.04(F)(1).

{¶ 9}  "When determining the best interest of the child or children in allocating parental rights and responsibilities, in addition to the specific statutory factors in R.C. 3109.04(F)(1), the court should give strong consideration to whether one of the parents was the primary caregiver for the child or children. * * * 'A court that fails to consider the primary care giving of a parent ignores the benefits likely to flow to the child from maintaining day to day contact with the parent on whom the child has depended for satisfying his basic physical and psychological needs.'" *In re N.M.*, Montgomery App. No. 24110, 2010-Ohio-5048, ¶23 (citations omitted).  When  determining whether to grant shared parenting, a trial court must consider the foregoing factors as well as those found in R.C. 3109.04(F)(2). These additional factors include: "(a) [t]he ability of the parents to cooperate and make decisions jointly, with respect to the children; (b) [t]he ability of each parent to

encourage the sharing of love, affection, and contact between the child and the other parent; (c) [a]ny history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent; (d) [t]he geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting; [and] (e) [t]he recommendation of the guardian ad litem of the child, if the child has a guardian ad litem."

{¶ 10} In the present case, the trial court made specific findings regarding each of the factors set forth above. With regard to the R.C. 3109.04(F)(1) factors, the trial court determined, with one exception, that they either did not apply or did not weigh significantly in either party's favor. The exception concerned factor (g), which pertains to child support. On that issue, the trial court noted Thomas' failure to make his court-ordered child support payments.

{¶ 11} With regard to the shared parenting factors in R.C. 3109.04(F)(2), the only significant findings by the trial court were (1) that the parties appeared incapable of cooperating or communicating, (2) that neither parent had encouraged shared love between the children and the other parent, and (3) that the guardian ad litem had found Melinda best suited to provide for the children.

{¶ 12} In addition to addressing the specific statutory factors, the trial court reached the following conclusion:

{¶ 13} "Mother appears to have been the primary caregiver during the marriage and seems to be best suited to care for the day-to-day needs of the children. She also seems to be better suited to provide care for the special needs of [T.U.]. There is no doubt in the Court's mind that both parties love their children dearly. The Court commends both of them for the extra, work, support, and care they exhibit in providing for [T.U.]

{¶ 14} "The parties must find an answer to the problem of transferring and administering [T.U.'s] medications. This is crucial to the future relationship of the parties, but more importantly, crucial to [T.U.'s] safety and well-being. The parties must find a way to put their differences behind them, or, at least to the side, for the future well-being of both of their children." (Doc. #231 at 2-6).

{¶ 15} After considering the evidence, the trial court named Melinda the legal custodian and residential parent. It awarded Thomas standard visitation. (Id. at 9). We review this ruling for an abuse of discretion. *Francis v. McDermott*, Darke App. No. 1753, 2009-Ohio-4323, ¶8. "An abuse of discretion implies an attitude of the trial court that is unreasonable, arbitrary, or unconscionable. * * * The discretion which a trial court has in a custody matter is given the utmost respect given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. * * * 'The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.'" Id. (citations omitted).

{¶ 16} Upon review, we see no abuse of discretion in the trial court's decision to designate Melinda the legal custodian and residential parent. Preliminarily, we note that the record fully supports the trial court's rejection of Thomas' request for shared parenting. The trial court correctly observed that the parties appear to be incapable of cooperating or communicating with each other. They have called the police on each other numerous times. They have regular disputes about visitation and T.U.'s medications. In short, the protracted length and bitterness of the divorce proceeding demonstrate that shared parenting is not a viable option.

{¶ 17} In support of his argument that Melinda should not have been named the legal custodian and residential parent, Thomas cites numerous issues that he contends show her lack of

suitability. Among other things, he asserts that she (1) failed to submit medical bills and then accused him of not paying them, (2) purposely scheduled all of the children's medical appointments during his summer visitation, (3) accused him of causing trouble at T.U.'s school, (4) neglected to provide him with necessary medications, (5) allowed T.U. to be burned and scalded while in her care, (6) allowed K.U. to suffer from urinary tract infections, (7) withdrew money from a retirement account without court approval, (8) fraudulently transferred a car, (9) retained his share of medical reimbursements, and (10) cancelled his health insurance. Thomas also mentions testimony about Melinda being "bi-polar" and testimony about concerns that her father may have molested one of the children.

{¶ 18} The trial court heard testimony about all of the foregoing issues, most of which were disputed or explained by Melinda. With regard to some of the more serious allegations, Melinda explained that T.U. got burned on a heat register when she had a seizure and fell on it. She testified that T.U. was scalded once when a water heater was set too high. Champaign County Children Services investigated both incidents and found no neglect. The agency also investigated an anonymous tip that one of the children had been molested and found it to be unsubstantiated. A report from the agency indicated that Melinda was "very protective" of her children and provided for their needs.

{¶ 19} With regard to the doctor's appointments, Melinda testified that she made them well before she knew Thomas was going to have three weeks of summer visitation. As for the bi-polar issue, Melinda admitted previously having been diagnosed with that disorder. She testified, however, that she was not suffering from any psychological disorder at the time of the hearing and that she was not taking any medication.

**{¶ 20}** Cathy Pullins, an MRDD worker, testified that she had known T.U. and the Ussher family from the time of the child's infancy until about age three. Pullins also had educated the other child, K.U., for approximately two years. Pullins described Melinda as a "wonderful parent" who was "very responsive, kept appointments * * *, [and] followed through with activities[.]" Pullins agreed that she always saw T.U. appropriately dressed, fed, and cleaned.

**{¶ 21}** We note, too, that the guardian ad litem had recommended Melinda as the legal custodian and residential parent. Additionally, we cannot ignore the trial court's finding, which is supported by the record, that Melinda appears to have been the primary care giver during the marriage and seems best suited to care for the children. At the time of the hearing, she had stable and relatively secure full-time employment with Honda. She worked during the day when her children were in school. Whenever she was unavailable, her mother assisted her. As for Thomas, he admitted being "flat broke," lacking even gas money, and having to borrow for diapers. He works as a truck driver but conceded that "there's not much freight out there right now." Thomas' schedule required him to  work second shift, resulting in him essentially seeing the children only on weekends.

**{¶ 22}** Having reviewed the record and considered the evidence, we are unconvinced that the trial court abused its discretion in designating Melinda the legal custodian and residential parent. Accordingly, Thomas' second assignment of error is overruled.

**{¶ 23}** The judgment of the Champaign County Common Pleas Court, Domestic Relations Division, is affirmed.

. . . . . . . . . . . .

GRADY, P.J., and FAIN, J., concur.

Copies mailed to:

Melinda G. Ussher
Ronald C. Tompkins
Hon. Brent A. Gilbert