[Cite as *Teufel v. Teufel*, 2017-Ohio-5732.]

# IN THE COURT OF APPEALS

## FIRST APPELLATE DISTRICT OF OHIO

## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JENNIFER A. TEUFEL, | : | APPEAL NO. C-160673 |
| | | TRIAL NO. DR1402172 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| ANTHONY J.R. TEUFEL, | : | |
| Defendant-Appellee. | : | |

Appeal From: Hamilton County Court of Common Pleas, Domestic Relations
                    Division

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: July 7, 2017

*Blake P. Somers, L.L.C.*, *Blake P. Somers* and *Stephanie Lake Wolfinbarger*, for
Plaintiff-Appellant,

*Kenneth E. Peller*, for Defendant-Appellee.

ZAYAS, **Judge.**

{¶1}     Plaintiff-appellant Jennifer A. Teufel ("Jennifer") appeals from the domestic relations court's order that she and defendant-appellee Anthony J.R. Teufel ("Tony") have shared parenting of their daughter, Charlotte.  Because we hold that the trial court did not abuse its discretion in ordering shared parenting, we affirm its judgment.

## *Background*

{¶2}     Jennifer and Tony were married on May 22, 2010.  They have one child, Charlotte, born on February 7, 2014.  Jennifer filed for divorce on November 13, 2014.  The divorce proceedings culminated in a custody trial on March 1 and 2, 2016.  Prior to the trial, Jennifer and Tony shared custody of Charlotte.  The parties had attended a few counseling sessions, with limited success, and had been utilizing "Our Family Wizard" to facilitate communication.  In September 2015, Jennifer was found in contempt of court for violating the temporary custody arrangement, but purged the contempt.

{¶3}     At trial, the parties and their mothers testified, as well as Hamilton County Domestic Relations Court parenting department investigator, Linda Reed. The testimony established that Jennifer lives near her parents in a house her parents purchased.  She works "banker's hours" at Cincinnati Insurance Company, with one day a week working from home.  Tony, on the other hand, lives with his parents.  He works as a tennis instructor for various country clubs and also owns and operates a small business that provides tennis instruction services.  His work schedule is much less regular than Jennifer's.

{¶4}     Jennifer proposed that she be designated the residential parent, while Tony proposed a shared-parenting plan, as well as a plan where he would be the

residential parent. Jennifer wanted Charlotte to spend at least three days a week in daycare for structure and routine, while Tony wanted Charlotte to spend the days with either him or his parents. Tony testified that Charlotte would often accompany him to lessons he was teaching, and would participate in classes where he taught young children.

{¶5} The testimony left no question that both Jennifer's and Tony's families are loving, supportive, and capable of providing for all of Charlotte's needs. There was also no concern about substance abuse, domestic violence, criminal activity, financial problems, or other similar issues. Neither party desired to live outside the state. The main point of contention was the parties' ability to communicate with each other.

{¶6} Jennifer's position was that Tony's words did not match his actions. To her, he was dishonest, or at least inconsistent, about his work schedule, but Tony provided reasonable explanations for these "inconsistencies." Jennifer also took issue with Tony working during his "parenting time." However, he testified that he would involve Charlotte in the classes he was teaching during parenting time, that his parents would watch Charlotte while he was teaching, or that Charlotte would be within sight while he was teaching.

{¶7} Jennifer also claimed that Tony's behavior during child exchanges was so uncomfortable that she was forced to stop speaking to him altogether in order to avoid arguments in front of Charlotte. However, when pressed by the trial court on this point, Jennifer stated that Tony or his parents would often say something to the effect of, "good morning" to Jennifer during exchanges, and Jennifer would either get mad or refuse to acknowledge the comment and interact only with Charlotte. The trial court pointed out that refusing to even respond when someone says "good

morning" did not set the best example for Charlotte. More generally, Tony and his mother testified that they speak positively about Jennifer to Charlotte, whereas Jennifer and her mother testified that they tend not to talk about Tony at all around Charlotte. Jennifer and her mother did testify that Jennifer keeps pictures of Tony and Charlotte in her house for Charlotte's benefit.

{¶8} Reed prepared a report concluding that Jennifer should be the custodial/residential parent. Reed based her conclusion on the level of hostility between Jennifer and Tony. Reed noted that Tony was impulsive and that he seemed unable to talk about Jennifer without saying something negative. However, her report stated that "both parents were successful in highly competitive individual sports" and "[e]ach seems to place great value in winning, which is not conducive to working together." Her report further stated that "[b]oth parents love Charlotte and it would be in her best interest for Mr. and Mrs. Teufel to stop arguing and parent Charlotte together." Reed's report was dated September 28, 2015, over five months prior to the custody trial.

{¶9} The trial court adopted a modified version of Tony's shared-parenting plan as the final decree of shared parenting. The plan contained regiment and detail, and provided both parents access to Charlotte. The trial court's decision allocating parental rights and responsibilities stated:

> Parents cannot, in good faith, be obstructionists with one another and present an argument *against* shared parenting, at trial, based upon a "failure to communicate," suggesting that communication is not a viable possibility "post-decree." * * * During the trial the parties entered into a temporary agreement on an aspect of parenting that was very encouraging to the Court and confirmed this Court's belief that

4

these parties are capable of compromise and mature discussion and evaluation in order to make mutual parenting decisions that is [sic] ultimately in Charlotte's best interests.  With the assistance of <u>mandatory co-parenting counseling for the immediate twelve (12) months after the entry of their final Decree of Divorce,</u> these parents will learn to effectively co-parent their daughter which will include learning how to speak respectfully to one another, especially in the presence of Charlotte.

(Emphasis sic.)

{¶10}     The trial court then addressed the applicable statutory "best interest" factors found in R.C. 3109.04(F)(1):

(a) <u>The wishes of the child's parents regarding the child's care:</u> *both parents present themselves as very loving towards and very capable of caring for all of their daughter's needs.*

* * *

(c) <u>The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest:</u> *the parties testified to this factor and the Court has taken it into consideration.*

* * *

(e) <u>The mental and physical health of all persons involved in the situation:</u> *this was considered by the Court.*

(f) <u>The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights:</u> *this factor was strongly considered by the Court.*

5

* * *

(g) <u>Whether either parent has failed to make all child support payments * * *</u>: *this factor is only slightly relevant in this case.*

* * *

(i) <u>Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court:</u> *this factor was strongly considered by the Court.*

{¶11} The trial court proceeded to address the applicable statutory factors of R.C. 3109.04(F)(2) related to whether shared parenting is appropriate:

(a) <u>The ability of the parents to cooperate and make decisions jointly, with respect to the children:</u> *while the parties initially found communication to be difficult, their co-parenting counseling and utilization of "Our Family Wizard" greatly assisted them in improving their communication skills. They even mutually agreed to a temporary daycare plan **during** the custody trial.*

(b) <u>The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent:</u> *once the divorce has concluded, it is hopeful that the parents will be able to mutually appreciate the needs and best interests of Charlotte and that Charlotte **needs** the love and support of **both** of her parents.*

(Emphasis sic.) The trial court made no specific findings of fact regarding any witness's credibility.

### Assignment of Error

{¶12}    Jennifer's sole assignment of error is that the trial court erred when it ordered shared parenting "based on speculation" and "against the manifest weight of the evidence."

### Standard of Review

{¶13}    R.C. 3109.03 provides that divorcing spouses "shall stand upon an equality" when determining custody arrangements.  R.C. 3109.04 outlines the trial court's process when allocating parental rights and responsibilities.  R.C. 3109.04(F)(1) directs the court to consider "all relevant factors" when determining the best interest of the child, and provides a nonexhaustive list of factors.  R.C. 3109.04(F)(2) further provides that "[i]n determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors," and lists five additional factors.  The R.C. 3109.04(F)(1) and (2) factors that are applicable in this case are outlined in our discussion of the trial court's decision.

{¶14}    The trial court must follow R.C. 3109.04 in deciding child-custody matters, but it has broad discretion.  *Cwik v. Cwik*, 1st Dist. Hamilton No. C-090843, 2011-Ohio-463, ¶ 41.  Therefore, we review the trial court's decision for an abuse of discretion, guided by the factors outlined in R.C. 3109.04.  *Id.*  "An abuse of discretion 'connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court.' "  *State v. Dotson*, 1st Dist. Hamilton No. C-160324, 2017-Ohio-918, ¶ 7, quoting *Pembaur v. Leis*, 1 Ohio St.3d 89, 91, 437 N.E.2d 1199 (1982).  "An abuse of discretion exists if the court's decision regarding the child's best interests is not supported by competent, credible evidence."  *In re D.M.*, 1st Dist. Hamilton No. C-140648, 2015-Ohio-3853, ¶ 11.

{¶15}     In reviewing the trial court's decision, we are also mindful of the Ohio Supreme Court's decision in *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988):

> [I]t is inappropriate in most cases for a court of appeals to independently weigh evidence and grant a change of custody. The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct.

(Citation omitted.) *Id.* at 75.

### The Trial Court Did Not Abuse Its Discretion

{¶16}     Having reviewed the statutory requirements and factors, we hold that the trial court followed the correct procedures and considered the proper factors in making its decision. The only question is whether the trial court abused its discretion, and based on a thorough review of the record, we hold that it did not.

{¶17}     Jennifer argues that the trial court improperly based its decision on speculation and hope rather than the evidence presented at trial, and that the evidence presented showed that the parties are too "high-conflict" to be able to effectively communicate. She believes that the trial court's decision was based on Tony's "self-serving" and "disingenuous" testimony, and that there was "overwhelming evidence of the parties' inability to cooperate and communicate, and

8

no evidence to support a finding that they will improve in this area." To support these arguments, Jennifer points to alleged inconsistencies in Tony's testimony to demonstrate his lack of credibility. She also points to the parenting investigation report recommending against shared parenting, and cites to case law from the Twelfth District stating that "[w]hile no factor in R.C. 3109.04(F)(2) is dispositive, effective communication and cooperation between the parties is paramount in successful shared parenting." *See Seng v. Seng*, 12th Dist. Clermont No. CA2007-12120, 2008-Ohio-6758, ¶ 21.

{¶18} While it is true that Reed recommended against shared parenting, she also stated that "[b]oth parents love Charlotte and *it would be in her best interest for Mr. and Mrs. Teufel to stop arguing and parent Charlotte together*." (Emphasis added.) The statute does not require the trial court to give the parenting investigator's recommendation more weight than any other witness's testimony. *See* R.C. 3109.04(C) (stating that "[p]rior to trial, the court may cause an investigation to be made," but not indicating the weight to be given to the report's conclusions). Furthermore, the trial court's statements regarding the "best interest" factors of R.C. 3109.04(F)(1)(f) and (i)—"this factor was strongly considered by the court"—implies that the court had reviewed and considered Jennifer's earlier contempt finding, and Tony's testimony addressing his alleged "inconsistencies."

{¶19} A review of the entire record demonstrates that the trial court's determinations were supported by competent, credible evidence. The parties' relationship had improved over the course of the proceedings and their pretrial shared-parenting arrangement had been mostly successful. For example, a comparison of emails exchanged between the parties in May and June of 2015, to emails exchanged between September 2015 and January 2016, demonstrates an

improvement in the parties' tone when communicating. Additionally, testimony established that earlier in the proceedings, the occasions when the parties exchanged Charlotte were contentious, but that they had become less or not at all contentious as time went on. The court reasonably determined that it was in Charlotte's best interest for the parties to remain on their current trajectory, and its decision set strict guidelines as to the parties' interactions to ensure that their communication continued to improve.

{¶20} Jennifer cites two cases—*Ussher v. Ussher*, 2d Dist. Champaign No. 2009-CA-49, 2011-Ohio-1440, and *Earley v. Earley*, 12th Dist. Clinton No. CA2012-07-001, 2012-Ohio-4772—as examples that are "much more akin to the facts" in this case. However, the decisions in these cases do not provide much factual detail about what the parties' difficulties were and state only that the trial courts determined that the parties could not effectively communicate about parenting decisions. The trial court here came to a different conclusion.

{¶21} Furthermore, though we agree that effective cooperation is important in shared parenting, the statute requires only that the trial court consider the parties' *ability* to cooperate effectively, not their prior success in doing so. The trial court's decision indicates its belief in the parties' ability to cooperate, and its belief that any arguments to the contrary were perhaps not made in "good faith." The record shows that the trial court's decision was in large part based on its own credibility determinations, having observed the parties' interactions over the course of 16 months. We are obligated to give the trial court's determinations the "utmost respect" and to presume that they were "indeed correct." *Miller*, 37 Ohio St.3d at 75, 523 N.E.2d 846. There is competent, credible evidence supporting the trial court's

decision, and nothing indicating that the decision was unreasonable, arbitrary, or unconscionable. We therefore must overrule Jennifer's assignment of error.

## *Conclusion*

{¶22}     Because we hold that the trial court did not abuse its discretion, we affirm the judgment of the trial court.

Judgment affirmed.

M<small>OCK</small>, **P.J.**, and D<small>ETERS</small>, **J.**, concur.

Please note:

This court has recorded its own entry this date.