[Cite as *In re D.K.*, 2023-Ohio-4148.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE: D.K. AND D.K.

:   APPEAL NO.  C-220587
    TRIAL NO.  F19-1553Z

:

:   *O P I N I O N.*

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 17, 2023

*Eppley Legal Group* and *Mark C. Eppley* for Appellant Mother,

*Stagnaro Hannigan Koop, Co., L.P.A.*, and *Michaela M. Stagnaro* for Appellee Father.

**WINKLER, Presiding Judge.**

{¶1}  In this legal-custody appeal, the juvenile court awarded legal custody of twins D.K.1 and D.K.2 ("the Twins") to father.  Mother now appeals, raising seven assignments of error, relating to issues including the use of an affidavit to remedy a recording error, purportedly tainting the juvenile court's independent review of the magistrate's decision and denying mother the due process of law.  Following our review of the record and applicable case law, we overrule all seven assignments of error and affirm the judgment of the juvenile court.

## Facts and Procedural History

### I. Background

{¶2}  This case has a long factual history[1] replete with the contentiousness of two parents that simply cannot get along.  We begin in the fall of 2017 on the dating app Tinder.  There, mother and father matched and began a brief romance.  For approximately a month, the couple dated, eventually resulting in mother discovering she was pregnant with the Twins.  These children became the subject of a long-running custody dispute that began in 2018 and culminated in this appeal.

{¶3}  The evidence around the beginning of mother's pregnancy is unclear. Mother had informed father a few months after she discovered she was pregnant.  At that time, she told father that he was not the Twins' father.  Instead, mother told her then-paramour that he was the Twins' father, hoping that it would be him.

{¶4}  Mother substantiated her claims by taking a DNA test while pregnant and claimed the results showed her then-paramour was indeed the Twins' father.

---

[1] We note our task was made harder by the failure of appellant to cite to specific portions of the record.  *See* 1st Dist. Loc.R. 16.1(A)(3)(c).

Father requested the results of the test, but mother never produced them, claiming that she have lost the results and could not locate the company that performed the test to acquire a copy of the results.

{¶5} The Twins were born in June 2018, and mother initiated a child-support proceeding as a condition of receiving government assistance. In 2019, a DNA test was conducted as part of that proceeding that established father's legal paternity of the Twins and excluded mother's then-paramour. By then, father had permanently moved to Wisconsin where his family lives and got engaged to his fiancée. Father filed a petition for custody of the Twins, and both parents secured counsel, beginning the juvenile court proceedings that are the subject of this appeal.

## II. The juvenile court proceedings

{¶6} Both mother and father sought legal custody of the Twins. The juvenile court made efforts for mother and father to mediate and establish parenting time for father. The juvenile court issued an interim parenting-time order, but communication between the parents broke down as each parent accused the other of frustrating parenting the Twins.

{¶7} The proceedings became mired with discovery disputes, repeated recriminations, and long litigation. Mother accused father of making no effort to form a relationship with the Twins before his paternity was established in 2019. Father counters by accusing mother of frustrating his attempts to develop a relationship with the Twins and not responding to his requests for parenting time.

{¶8} The magistrate's report cites a planned trip to Perfect North Slopes, a skiing resort in Indiana, as a representative example of the parents' conflict. Father and mother agreed to meet at Perfect North Slopes for the Twins to spend the day with

3

father and his other children.  Mother initially said she and the Twins were on their way, but after an hour, mother called and asked father to pick the Twins up.  Father left the resort to meet mother, but she never showed up and later contacted father and apologized.

{¶9}    After two years of litigation, the parties went before a magistrate for a trial on the Twins' custody on May 17, 2021.  At trial, father put on his case-in-chief, including testimony on direct-examination from father, father's fiancée, and the Twins' paternal aunt, and testimony from mother as if on cross-examination.  After father's case-in-chief, the magistrate recessed the court for lunch, pausing recording.  When the trial resumed, mother put on her case-in-chief consisting of mother's testimony only, but the magistrate did not resume the recording.  Seven months later, on January 22, 2022, the magistrate issued a decision summarizing all the testimony presented, granting father legal custody of the Twins and designating father as the residential parent.  The magistrate set out a transition plan to move the Twins from mother's care to father's care.

{¶10}   While preparing objections to the magistrate's report, mother discovered the magistrate's recording error.  Thus, there was no recording of mother's case-in-chief or her direct-examination testimony for the juvenile court to review when ruling on the objections while father's case-in-chief was transcribed, including mother's extensive testimony as if on cross-examination.

{¶11}   When mother discovered this recording error, she moved to vacate the trial and requested that proceedings be reopened.[2]  Instead, the juvenile court ordered

---

[2] The magistrate who heard the trial had since left the juvenile court, so reopening proceedings would necessitate restarting with a new magistrate.

that mother submit an affidavit that contained her missing testimony so as to complete the record. Mother did so and submitted 48 pages of testimony to support her objections. The juvenile court overruled mother's objections and adopted the magistrate's decision with additional analysis responding to the objections. Mother timely appealed the juvenile court's judgment.

## Law and Analysis

{¶12} Mother raises seven assignments of error, relating to issues arising from the juvenile court's order to file an affidavit in lieu of the portion of the proceedings that was not recorded and could not be transcribed as well as challenging the juvenile court's best-interest determination, the manifest weight of the evidence, and requesting custody as a matter of law. For organizational clarity, we address the assignments of error out of order.

{¶13} As a general matter, "custody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial judge must have wide latitude in considering all the evidence before him * * * and such a decision must not be reversed absent an abuse of discretion." *Kane v. Hardin*, 1st Dist. Hamilton No. C-180525, 2019-Ohio-4362, ¶ 6, quoting *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). The term "abuse of discretion" implies that the trial court's decision was unreasonable or arbitrary. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "It is not sufficient for an appellate court to determine that a trial court abused its discretion simply because the appellate court might not have reached the same conclusion." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14. Rather, an appellate court must affirm the decision below "unless the court has exercised its discretionary judgment over the matter in an

unwarranted way or committed legal error." *State v. A.S.*, 2022-Ohio-3833, 199 N.E.3d 994, ¶ 5 (1st Dist.), citing *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35.

### *I. The transcription error and the affidavit remedy*

**{¶14}** In her fourth assignment of error, mother argues that the juvenile court erred when it required mother to submit an affidavit of the evidence presented that was not able to be transcribed. Juv.R. 40(D)(3)(b)(iii) and its civil analogue, Civ.R. 53(D)(3)(b), both require that objections to a magistrate's factual findings be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence, if a transcript is not available. Mother argues this rule only allows a party to submit either a complete transcript or no transcript and an affidavit that contains the entire record. Under this interpretation, an affidavit cannot be used alongside an incomplete transcript to fill any holes in the transcript.

**{¶15}** Mother's "all-or-nothing" interpretation is true where there is no available transcript at all. *Gill v. Grafton Corr. Inst.*, 10th Dist. Franklin No. 10AP-1094, 2011-Ohio-4251, ¶ 8, 16 (holding appellant must submit an affidavit of evidence under analogous Civ.R. 53(D)(3)(b) where appellant's indigency rendered the transcript unavailable). But mother's interpretation falters when a partial transcript is available. Two appellate districts have endorsed curing recording malfunctions that render a transcript not available or not complete by submitting an affidavit that contains the missing portions. *In re D.T.*, 9th Dist. Lorain No. 13CA010451, 2014-Ohio-2332, ¶ 37 (suggesting appellant should provide an affidavit containing portions of audiotape transcribed as "unintelligible"); *Vogel v.*

*Campanaro*, 2021-Ohio-4245, 180 N.E.3d 594, ¶ 31 (12th Dist.) (appellant must provide an affidavit detailing the events during 26-minute lapse in audio recording to properly object to a magistrate's evidentiary ruling during that lapse).

{¶16}   The situation here is similar to *In re D.T.* and *Vogel*.  In both cases, recording errors rendered a transcript incomplete when parties filed objections to a magistrate's order.  *In re D.T.* at ¶ 37 (portions of the audio recording were transcribed as "unintelligible"); *Vogel* at ¶ 31 (no transcript of a 26-minute lapse in recording).  Both appellate districts endorsed using an affidavit to supplement the incomplete transcript.  *In re D.T.* at ¶ 37; *Vogel* at ¶ 31.  The magistrate here stopped the recording during a recess and did not restart the recording, leaving mother's direct-examination testimony out of the transcript.  Mother relied on that testimony to argue the magistrate's decision was against the manifest weight of the evidence, like the appellant in *In re D.T.* did to make the same objection.  We see no reason why we should not follow the interpretation of Juv.R. 40 laid out in *In re D.T.* and *Vogel* and permit a juvenile court to use an affidavit alongside an incomplete transcript to supplement the missing portion.

{¶17}   Mother cites no case law where an Ohio court has prohibited this practice.  Mother cites *Bodor v. Fontanella* to argue that an affidavit "cannot be used as a substitute for a transcript unless it refers to all the relevant evidence submitted to the magistrate, as compared to selected parts of the evidence" relevant to the objections.    *Bodor v. Fontanella*, 11th Dist. Trumbull No. 2005-T-0091, 2006-Ohio-3883, ¶ 22, citing *Gladden v. Grafton*, 10th Dist. Franklin No. 05AP-567, 2005-Ohio-6476, and *Naso-Draiss v. Peters*, 9th Dist. Medina No. 03CA0086-M, 2004-Ohio-1983.  However, *Bodor*, as an Eleventh District opinion, is not binding on

this court and has the same precedential weight as *In re D.T.* and *Vogel*. Even if *Bodor* was binding, *Bodor* is distinguishable because it analyzes the similar but repealed Civ.R. 53(E), and in *Bodor* there was no recording of the magistrate's proceedings at all and thus no transcript, as opposed to the partial transcript here. Thus, *In re D.T.* and *Vogel* are more applicable here and we find their approach more persuasive.

{¶18} Consequently, we overrule mother's fourth assignment of error.

### II. Due-process implications of the affidavit

{¶19} In her fifth assignment of error, mother argues that the juvenile court deprived her of procedural due process when it required mother to submit an affidavit of her trial testimony that was not able to be transcribed. This assignment of error recasts the fourth assignment of error as a procedural-due-process violation under the Fifth and Fourteenth Amendments to the United States Constitution. Two other appellate districts have rejected similar claims.

{¶20} The Eleventh District analyzed the due-process issue in the context of Juv.R. 40(D)'s civil analogue, Civ.R. 53(D). *Dague v. Dague*, 11th Dist. Lake No. 2011-L-076, 2012-Ohio-1582. There, the appellant argued his due-process rights had been violated because "the trial court could not engage in a complete review of the hearing before the Magistrate and [the] Magistrate's decision as a result of the tape-recorder malfunction." *Id.* at ¶ 48. The Eleventh District rejected that argument and held the appellant had "the opportunity to submit an affidavit of the evidence not recorded pursuant to Civ.R. 53(D)(3)(b)(iii)." *Id.* at ¶ 49. The Eleventh District noted that if the appellant "felt that important evidence had been lost due to the malfunction, he was obligated to bring that evidence to the court's attention via an affidavit. He

failed to do so." *Id.* at ¶ 50. As a result, the Eleventh District determined there was "no violation of [the appellant's] due process rights." *Id.* at ¶ 49.

**{¶21}** The Twelfth District Court of Appeals applied the reasoning in *Dague* to reject another similar procedural-due-process claim. *Vogel*, 2021-Ohio-4245, 180 N.E.3d 594. There, the appellant claimed his due-process rights were violated because an error resulted in his hearsay objection and the magistrate's ruling not being recorded. *Id.* at ¶ 31. The appellant suggested the trial court erred as a matter of law by not reopening the proceedings. *Id.* at ¶ 28. Applying the Eleventh District's analysis in *Dague*, the Twelfth District concluded the trial court was not obligated to reopen the proceedings, and that appellant should have submitted an affidavit detailing the evidence and events that transpired during the 26-minute lapse in the recording. *Id.* at 31-32, quoting *Dague* at ¶ 1, 48-50.

**{¶22}** Applying the Eleventh and Twelfth Districts' rationale in *Dague* and *Vogel* to the case here, the juvenile court did not violate mother's procedural-due-process rights by requiring mother to submit an affidavit to fill the holes in the transcript. Mother submitted uncontroverted evidence in a 48-page affidavit where mother's counsel asked mother questions as if on direct-examination and without opposing counsel present to potentially object or cross-examine mother. Mother's testimony was transcribed and then submitted to the juvenile court to review alongside the transcript of the trial before the magistrate. Mother had the opportunity to use the incomplete transcript and the magistrate's decision to rebut father's case and advance her objections. Father did not object to using the affidavit.

**{¶23}** Mother argues that the juvenile court ought to have permitted mother to file an affidavit containing all the evidence presented at trial or to have permitted

both parties to submit dueling affidavits of all the evidence. But if any error occurred, it was invited. Under the invited-error doctrine, a party may not take advantage of an error that the party invited or induced the trial court to make. *Blair v. McDonagh*, 177 Ohio App.3d 262, 2008-Ohio-3698, 894 N.E.2d 377, ¶ 39 (1st Dist.), citing *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co.*, 28 Ohio St.3d 20, 502 N.E.2d 590 (1986), paragraph one of the syllabus.

{¶24} Mother gained the benefit of submitting an affidavit without being subject to evidentiary objections or cross-examination from father. Mother cannot now claim the juvenile court erred by failing to require father to submit a dueling affidavit when mother did not raise that issue in the juvenile court during oral argument, and father did not object. Mother also cannot claim that the affidavit was defective because it did not contain the entire transcript because mother was the party that prepared the affidavit and could have submitted whatever she wanted. If mother believed the affidavit must contain the entire record, mother could have added the transcript to her already 48-page affidavit. Any error in drafting the affidavit lies with mother.

{¶25} Consequently, we overrule mother's fifth assignment of error.

### III. Independent review of the magistrate's decision

{¶26} In her first, second, and third assignments of error, mother argues that the juvenile court's independent review process was faulty, in part because of the use of the affidavit to supplement the missing portions of the transcript. Mother argues that the juvenile court did not conduct an independent review because it adopted the magistrate's decision in whole or, in the alternative, if it did conduct a proper independent review, the juvenile court would necessarily rely on the affidavit and thus

10

decide the case on a different set of facts from the magistrate. Mother argues further that the juvenile court cannot defer to the magistrate's credibility determinations insofar as it relies on evidence that was not before the magistrate.

**{¶27}** In her first assignment of error, mother argues that the juvenile court erred by failing to undertake an independent review of mother's objections to the magistrate's decision. Juv.R. 40(D)(4)(d) provides, in ruling on objections, the juvenile court "shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." *See In re C*, 1st Dist. Hamilton Nos. C-200003 and C-200004, 2020-Ohio-4206, ¶ 15.

**{¶28}** Mother argues that the juvenile court does not conduct an independent review of the factual issues where the juvenile court simply recites the magistrate's findings. However, this is expressly permitted under Juv.R. 40(D)(4)(b), which authorizes the juvenile court to adopt or reject the magistrate's decision "in whole or in part, with or without modification" after conducting an independent review. A juvenile court reviewing a magistrate's decision does not function like an appellate court issuing an opinion separate from a trial court's judgment. *See In re P.S.*, 10th Dist. Franklin No. 07AP-516, 2007-Ohio-6644, ¶ 23, citing *Sweeney v. Sweeney*, 10th Dist. Franklin No. 06AP-251, 2006-Ohio-6988, ¶ 14. Under the plain language of Juv.R. 40, a juvenile court may properly decide to adopt the magistrate's decision "in whole" and "without modification" so long as the juvenile court's independent review shows the magistrate properly determined the facts and applied the appropriate law.

**{¶29}** Here, the record shows the juvenile court undertook an independent review. The juvenile court discussed the facts of the case and applied each of the

11

statutory best-interest factors in four pages of analysis. The juvenile court provided additional legal reasoning specifically addressing two of mother's objections regarding the submission of an affidavit in lieu of unrecorded testimony and that a grant of legal custody of the Twins to father would violate mother's due-process rights. The juvenile court found the law cited by mother applied to permanent-custody and termination-of-parental-rights cases only and not to the legal-custody determination. Thus, the juvenile court's decision demonstrated that it undertook an independent review of the magistrate's decision.

{¶30} Consequently, we overrule mother's first assignment of error.

{¶31} In her second assignment of error, mother argues that if there was an independent review conducted by the juvenile court, then the juvenile court relied on a different record than what the magistrate relied on when making his decision. Again, mother asserts error in conduct expressly authorized by the Rules of Juvenile Procedure, which authorize the juvenile court to take new evidence not presented to the magistrate. Juv.R. 40(D)(4)(b) provides that when the juvenile court acts on a magistrate's decision, it "may hear a previously-referred matter, take additional evidence, or return a matter to a magistrate." Juv.R. 40(D)(4)(d) goes on to restrict when a juvenile court may take additional evidence when acting on objections. That rule provides, in relevant part, "the court *may hear additional evidence* but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate." (Emphasis added.) Juv.R. 40(D)(4)(d). Thus, a juvenile court can go beyond the evidence presented to the magistrate when it conducts its independent review.

**{¶32}** Indeed, this court has endorsed a juvenile court taking additional evidence to correct problems encountered at the objections hearing. *In re M/W Children*, 1st Dist. Hamilton No. C-180623, 2019-Ohio-948, ¶ 38. There, we instructed that the juvenile court "could have conserved substantial judicial resources while causing little inconvenience to the parties or the court" by permitting additional testimony at the objections hearing. *Id.* The same is true for the juvenile court here. By having mother submit an affidavit of her testimony, the juvenile court conserved substantial judicial resources while causing little inconvenience to the parties or the court. All of mother's alternative solutions, submitting an affidavit containing the entire record, both parties submitting dueling affidavits, or an entirely new trial before the magistrate, would inconvenience the court, strain its judicial resources, and cause substantial expense to both parties, who have already spent years litigating.

**{¶33}** Consequently, we overrule mother's second assignment of error.

**{¶34}** In her third assignment of error, mother argues that the juvenile court may not rely on the affidavit of mother's testimony while also deferring to the magistrate's assessment of the witnesses' credibility and weighing of the evidence. Mother argues the juvenile court cannot have it both ways, deferring to the magistrate on credibility while relying on evidence that was not before the magistrate.

**{¶35}** Specifically, mother takes issue with the juvenile court making independent factual determinations and deferring to the fact "[t]he magistrate was able to view the demeanor of the witnesses judge the credibility of the testimony and the weight of the evidence presented to the court." It is not clear whether the court deferred to the magistrate regarding all the testimony or deferred regarding only the transcribed testimony. Regardless, this ambiguity is inconsequential.

**{¶36}** If the juvenile court deferred as to all the testimony, there should be no material differences between all the testimony presented and the testimony transcribed plus the affidavit. The juvenile court ordered mother to submit "an affidavit of the evidence presented that was not able to be transcribed." Presuming that mother followed the juvenile court's order, the transcript would contain only evidence that the magistrate heard and thus be subject to the magistrate's credibility determinations, even with the inevitable differences between the testimony presented at trial and the affidavit submitted months later.

**{¶37}** If the juvenile court deferred to the magistrate only on evidence that was transcribed and made an independent credibility determination on the affidavit, the court may do so. *See In re A.S.*, 1st Dist. Hamilton No. C-180056, 2019-Ohio-2359, ¶ 19 ("although it may, a juvenile court is not required to defer to a magistrate's credibility determination when ruling on objections.") The juvenile court must be mindful when reviewing any factual finding based on witness credibility that the magistrate "is in the best position to judge the credibility of the witnesses and the weight to be given to the evidence presented." *In re S.D.*, 1st Dist. Hamilton Nos. C-200045 and C-200084, 2020-Ohio-3379, ¶ 18, quoting *State v. Carson*, 1st Dist. Hamilton No. C-180336, 2019-Ohio-4550, ¶ 16. The juvenile court judge does not have the advantage of being present in the courtroom as the witnesses testified and observing the witnesses' demeanor. *Id.* Here, the magistrate was still in the better position to assess mother's overall credibility as a witness because the magistrate actually heard the testimony in the courtroom and observed mother's demeanor.

**{¶38}** Mother's arguments to the contrary are unconvincing. Mother cites cases analyzing the role of appellate courts to argue the juvenile court cannot both

defer to a magistrate's credibility determination and independently determine other facts. But mother's cited cases are inapplicable because a juvenile court conducting an independent review of a magistrate's decision is "the ultimate trier of fact," unlike an appellate court conducting appellate review. *See In re A.S.* at ¶ 20, quoting *State ex rel. DeWine v. Ashworth*, 4th Dist. Lawrence No. 11CA16, 2012-Ohio-5632, ¶ 37, and *Hurricane Dev., L.L.C. v. Fourtounis*, 2017-Ohio-927, 86 N.E.3d 857, ¶ 27 (8th Dist.). Similarly, mother's comparison between a juvenile court referring a matter to a magistrate and a trial court overseeing a jury is inapplicable because Juv.R. 40(D)(4)(d) requires the juvenile judge to usurp a magistrate when he or she has erred, even on factual issues, where a trial judge cannot improperly usurp the jury's role.

{¶39} Accordingly, we overrule mother's third assignment of error.

### IV.  *Manifest weight of the evidence*

{¶40} In her sixth assignment of error, mother argues that the juvenile court erred because the manifest weight of the evidence clearly favored mother. While mother invokes App.R. 12(C) and the civil weight-of-the-evidence standard, we have previously applied the abuse-of-discretion standard and determined whether the juvenile court's best-interest determination is supported by competent and credible evidence. *In re D.Z.F.*, 1st Dist. Hamilton No. C-200260, 2020-Ohio-5246, ¶ 19-20, citing *In re E.B.*, 1st Dist. Hamilton No. C-190050, 2019-Ohio-3943, ¶ 13; *In re F.B.D.*, 1st Dist. Hamilton No. C-180356, 2019-Ohio-2562, ¶ 11. Mother advances no argument for why this court should deviate from its ordinary practice here.

{¶41} A juvenile court's determination of legal custody must be based on the best interest of the children. *See In re Allah*, 1st Dist. Hamilton No. C-040239,

2005-Ohio-1182, ¶ 10. R.C. 3109.04(F)(1) lays out the ten applicable factors that may guide juvenile court when determining the best interest of the child. No single factor controls and the weight to be given to any factor lies within the trial court's discretion. *See In re M., R., & H. Children*, 1st Dist. Hamilton No. C-170008, 2017-Ohio-1431, ¶ 34. The juvenile court's judgment shows that it considered the statutory best-interest factors and supported each determination with competent and credible evidence.

{**¶42**} Mother argues that the juvenile court (1) failed to consider that mother was the "100% involved parent" and the only caretaker of the Twins; (2) went out of its way to hold mother accountable for the initial confusion regarding paternity, miscommunications regarding visitation, and not being a perfect parent while ignoring father's faults; and (3) ignored the wishes of the Twins. These arguments are unconvincing.

{**¶43**} First, while mother was the sole caretaker of the Twins prior to the juvenile court's grant of custody to father, that is not a statutory best-interest factor except insofar as the children have adjusted to their home, school, and community while under mother's care. *See* R.C. 3109.04(F)(1)(d). The juvenile court has the discretion to weigh this against all the other statutory factors and the testimony that mother exhibited a pattern of frustrating father's involvement with the Twins. Moreover, the juvenile court considered mother's role in ensuring she remains the sole caretaker by engaging in a persistent effort to frustrate father's parenting time, refusing to provide the Twins' school and medical records, and resisting developing communication channels between mother and father.

{**¶44**} Second, mother's conduct and miscommunications regarding visitation and paternity are relevant to the best-interest inquiry. Which parent is more

likely to honor and facilitate court-approved parenting time and whether a parent has violated a shared-parenting decree are two of the statutory best-interest factors. R.C. 3109.04(F)(1)(f), (i). This is important in legal-custody cases such as this where the nonresidential parent retains significant parental rights. Thus, mother's reluctance to follow court orders, failed visitation plans, and misstatements of paternity are all relevant to assessing whether mother or father is more likely to respect the other parent's residual parental rights. *See In re L.L.*, 1st Dist. Hamilton No. C-200058, 2020-Ohio-5609, ¶ 11 (finding mother's misconduct relevant to determination that father was more likely to honor parenting-time decrees). Thus, the juvenile court did not go out of its way to consider mother's faults, but it was instructed to consider both mother's and father's merits and faults by R.C. 3109.04(F).

**{¶45}** Mother's argument that the juvenile court ignored father's faults is similarly unconvincing. The juvenile court expressly considered father's move from Ohio to Wisconsin as instructed by R.C. 3109.04(F)(1)(j). The court also did not overlook father's own stubborn and uncooperative actions in coordinating parenting time. But the court had to decide between two imperfect parents who was the more likely one to honor the court's orders. The juvenile court also considered father's failure to make all child-support payments as instructed by R.C. 3109.04(F)(1)(g) and noted as part of its analysis that father owed $900.

**{¶46}** Third, the juvenile court properly determined that the Twins, at age three, were too young to express their wishes. We have no reason to doubt this determination, and mother does not argue that the juvenile court erred in that determination. Instead, mother argues only that removing the children from their

17

mother would be harmful, which the juvenile court addressed in multiple places elsewhere in its analysis.

{¶47} Even if the juvenile court erred in that determination, any error would be invited by mother. Under the invited-error doctrine, a party may not take advantage of an error that the party invited or induced the trial court to make. *McDonagh*, 177 Ohio App.3d 262, 2008-Ohio-3698, 894 N.E.2d 377, at ¶ 39. If mother believed the wishes of the Twins were necessary to the custody determination, mother should have moved under R.C. 3901.04(B) for the court to interview the Twins, determine where their interests lie, and appoint a guardian ad litem to advance their interests. Instead, mother proceeded to trial without evidence of the Twins' wishes. Mother cannot now argue on appeal that the juvenile court erred by failing to consider the wishes of the Twins when mother had the opportunity to raise that issue in the juvenile court but chose not to.

{¶48} Ultimately, there was a substantial amount of competent and credible evidence to support the juvenile court's determination that granting legal custody to father was in the best interest of the Twins.

{¶49} Consequently, we overrule mother's sixth assignment of error.

### V. Custody as a matter of law

{¶50} In her seventh and final assignment of error, mother argues that she should be awarded custodial rights over the Twins and be designated their residential parent as a matter of law. Here, mother restates her arguments about the manifest weight of the evidence but recast as an argument under App.R. 12(B). But mother fails to cite any authority or explain why those arguments justify a grant of legal custody as a matter of law.

**{¶51}** Generally, "it is inappropriate in most cases for a court of appeals to independently weigh evidence and grant a change of custody" under App.R. 12. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988); *Teufel v. Teufel*, 1st Dist. Hamilton No. C-160673, 2017-Ohio-5732, ¶ 15, quoting *id*. This principle is particularly true in custody matters. The Supreme Court of Ohio instructs appellate courts to respect the juvenile court's discretion in custody matters and be mindful that an appellate court lacks the knowledge a juvenile court gains by observing the witnesses and the parties during proceedings. *See Miller* at 74, citing *Trickey v. Trickey*, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952). Accordingly, it would be inappropriate for an appellate court to use App.R. 12(B) in this situation to dictate legal custody as a matter of law contrary to the juvenile court's determination where the juvenile court has the advantage of observing the witnesses and the parties over five years of proceedings.

**{¶52}** Consequently, we overrule mother's seventh assignment of error.

## Conclusion

**{¶53}** In light of the foregoing analysis, we overrule mother's seven assignments of error and affirm the judgment of the juvenile court.

Judgment affirmed.

**BOCK** and **KINSLEY**, **JJ.**, concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.